Kiggins *v.* Butler, Appellant.

Argued September 25, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Myron W. Lamproplos,* with him *Vincent R. Smith,* for appellant Espey.

*Avra N. Pershing, Jr.,* with him *Henry B. Waltz, Jr.,* for appellant Butler.

*Joseph M. Loughran,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, November 12, 1956:

In this trespass action the jury returned a verdict of $23,500 in favor of the wife-plaintiff Eleanor C. Kiggins and $5,000 in favor of the husband-plaintiff Wayne E. Kiggins. The lower Court reduced the verdicts respectively to $18,000 and $2,000. The defendants appealed, averring that the amount awarded to Mrs. Kiggins is still excessive.

We are always reluctant to decrease the amount of a verdict which has already felt the shears in the Court below because, obviously, the Trial Judge, having seen the aggrieved party, is in a better position to apply the tape measure of testimony against the living person than an appellate court, which never sees the injured plaintiff but is limited in its review of the case to a study only of the inanimate printed record. Even so, we are convinced from that record that the amount of $18,000 does not represent an over-generous hand or a liberality indifferent to evidence.

Mrs. Kiggins, who was 32 years of age at the time of the accident, sustained a serious injury to her back which in all probability has left her with a permanent disability. Dr. John M. Best, who treated Mrs. Kiggins, testified: "Q. Tell us about her back for the future, Doctor. What type of back will she have? A. I think her likelihood is she will have a weak back and she may have a recurrence at any time. Q. She will have a weak back for how long, Doctor? A. I don't know, probably forever. Q. Will you explain what you

mean by a weak back? A. I think she could have episodes of pain and recurrence of her symptoms. Q. How about heavy work or heavy lifting? A. It may aggravate it at any time. Q. How long will that condition exist? A. I think that will be permanent. If she should continue to have trouble, I think she should have it fused. Q. What is a fusion, Doctor? A. It is an operation to stiffen that segment of the spine so it doesn't move."

The defendants assert and allege as error that in his charge, the Trial Judge instructed the jury that the operation mentioned by Dr. Best would immobilize Mrs. Kiggins' back for all time. The Judge's words were as follows: "It is your duty to determine whether she has a permanent injury or not. As I remember Doctor Best's testimony, he said in his opinion it was permanent. If she would have to have a fusion operation later on, it would result in the stiffening of the back and that would be permanent. It would immobilize her back for all time. You take that and compare it with Doctor Perone's and Doctor Mauer's testimony and all of the medical testimony in the case and then *you decide whether or not you think it is a permanent injury.*" (Emphasis supplied.)

It will be noted that when the Trial Judge said that: "It would immobilize her back for all time," he was merely citing what Dr. Best had said, with the specific direction that the jury was to "take that" testimony and "compare it with" the testimony of the two defendants' doctors, and "all the medical testimony in the case."

. Mrs. Kiggins' back injury was known as a "fracture of the facet." Testifying from X-ray pictures introduced at the trial, Dr. Best described the fractured facet as a "broken part of the back": "Q. What do those

pictures show? A. They show that she has a small abnormality or small abnormal piece of bone a half inch long lying along the facet on the right side between the fourth and fifth . . . lumbar vertebrae. Q. When you saw that, what did that indicate to you, Doctor? A. She had had probably a fracture of the facet . . . Q. That facet is in the back, is that right? A. Yes. Q. That's what you commonly call a broken part of the back? A. That's right."

Prior to the accident Mrs. Kiggins, who is the mother of three children, was a healthy woman who cared for her children and husband and performed all the household work that goes with a family of that size. From the time she was injured she has had to wear a heavy, all-encompassing metal back brace which limits her movements considerably. She is unable to do her heavy housework, she cannot rest properly, she cannot sleep more than four hours continuously, she cannot sit in a comfortable or easy chair, and when she rides in an automobile she must be lifted in and out of the car.

At the time of the accident she suffered a bruised hand which later required surgery. For two and one-half years prior to the trial her back was never free from pain; she also bore the torment of a constant ache in the back of her head.

The testimony adduced in Mrs. Kiggins' behalf would indicate that her future is one clouded with portents of infirmity, ill health, and remedial surgery, all attendant with inevitable pain and discomfort. The law allows compensation for such misfortune when it results from the fault of others. What the amount of the compensation should be is always a difficult problem to resolve. It is practically impossible to determine with mathematical exactness the monetary value

of what is lost when illness displaces health, pain ousts well-being, discomfort dethrones comfort, and bodily misery banishes physical contentment. The law has, however, said that what cannot be done with blueprints, instruments, and technical analyses can be accomplished justly, fairly, and with reasonable accuracy by twelve citizens who, with no personal interest to serve and no benefit to gain, will apply the wisdom of their experience and the practicality of their good sense to the evidence in the case and decide the amount that the sufferer is entitled to because of the damage done by the author of his adversity. It is, of course, possible for a jury, despite their good intentions, to err, and it would seem that in this case they did err in their verdict to the extent cut away by the Trial Court, but we are not convinced that their measuring rod of good sense was unreliable to the degree argued by the defendants.

We are satisfied that the judgments entered below represent a fair and just disposition of the entire litigation, and they are, accordingly affirmed.